## Rock Cassell Gas Co. v. Kirk's Adm'r.

(Decided March 10, 1936).

W. R. McCOY and CHESLIE A. LYCAN for appellant.

J. B. CLARK for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER —Reversing.

The appeal is from a $500 judgment for the death of a six months' old child, Garland Kirk, charged to have been caused by the wrongful and negligent turning off of gas from his parents' dwelling.

The appellant owned a gas lease on a certain area in Martin county. Louis Kirk, the father of the child, owned the surface of about 30 acres, on which he lived. At one time he was permitted to use gas from a well on that parcel near his home. Later he connected with a line from another well which served his father's home near by. A controversy existed between him and the company as to whether he had the right to free gas from this or any other well. After having been given warning and verbal notice of the company's purpose to cut him off, the gas was cut off on March 12, 1934.

The baby had been ill with pneumonia in Febru-

ary, but had apparently recovered. Ten days or two weeks after the gas was cut off he caught cold or suffered a relapse and died in a few days. The company denied that its act was the proximate cause of the child's death, and maintained that his father was a trespasser, or at most a mere licensee, and the company owed no duty either to the child or his parents to continue furnishing the gas.

No other fuel had been supplied for heating the home, although notice had been received of what was to be done and the day was cold. It appears that the child's mother did build a little fire in the grate that day. There was plenty of wood and coal near by to be had for the gathering. After the child had taken cold at the time we have stated, his condition was reported to the doctor who had visited him while he had pneumonia, and some medicine was supplied without another visit. The mother testified that she could not keep the room warm as she had done while heating with gas. Dr. Fairchild was asked a hypothetical question as to what effect cutting off gas and changing the temperature of the room suddenly from warm to cold would have upon the child in the condition he was in. He responded that he knew nothing of the circumstances, but "a sudden change of temperature is bad for anybody"; that the effect would depend upon the ventilation, kind of fire being kept, and so many other things that he could not answer. Any sudden change in temperature, he stated, should produce its effect in less than ten days or two weeks. He did not know what was wrong with the child in its second illness, or what produced his death, since he had not seen him.

This was all the evidence. It would seem apparent that it was not sufficient to establish in any degree any casual connection between the cutting off of the gas supply and the death of the child. The court therefore should have directed a verdict for the defendant.

It is not necessary to consider other questions respecting the right of the child's father to have the gas supply continued free.

Judgment reversed.